## Cox & Shelley v. Garber et al.

In January, 1852, S. & S., attorneys at law, received for collection from G. E. G. two notes against B.; B. being unable to pay at once, assigned to W. H. S., one of the attorneys, in trust, and as collateral security on this debt, a bond which B., with one W., held against L. and J. G., for the conveyance of certain lands, amounting to one hundred acres, in which land B. held an interest of one undivided moiety. S. gave a receipt to B., identifying the bond, and stating that he was "to hold the same in trust, until said B. secured by mortgage or otherwise, two notes given by him to G. E. G., dated this day, for three hundred and fifty-five dollars and sixty-one cents, each, payable in four and six months"—which receipt bears date January 2, 1852. Afterwards S. & S. received from C. & S. for collection, certain claims which they held against B., which were settled by the latter giving two notes for four hundred and twelve dollars and seventy-three cents each, and to secure them B. made another assignment of his interest in the same bond, causing the assignment to cover the demands of both G. E. G., and C. & S. Upon this arrangement, on the 24th of January, 1852, S. & S. gave B. a new receipt, reciting the assignment of the bond to S. and the claims held by them in favor of both creditors, to-wit: two notes in favor of G. E. G., and two in favor of C. & S., and stipulating that the condition of the assignment of the bond by B. to S., was "for the purpose of securing the payment of said notes, and no other, and if B. should at any time be able to get the title to said property," the bond was to be delivered up to him, he securing the said notes by mortgage on the property. On the 26th of May, 1852, S. assigned his right and title to the bond to S., his partner, who obtained the legal title to the land. On bill filed by C. & S., against S.—the party holding the legal title to the bond—and G. E. G., the other creditor—praying that the trustee might be decreed to sell the land; and claiming that they were

entitled to priority of payment, or, at least, to share equally in the fund with G. E. G.: *Held*, 1. That S., to whom the bond was assigned, was properly admitted to testify to the circumstances under which the bond was assigned, and the intention of the attorneys, S. & S., in relation to the rights of the creditors; 2. That such testimony did not contradict the receipt given by S. & S. to B.; 3. That G. E. G. was entitled to priority of payment out of the trust fund.

*Appeal from the Mahaska District Court.*

THURSDAY, JUNE 17.

IN EQUITY. This is a controversy between creditors for the application to their claims of certain funds of their debtor. The facts are as follows: In January, 1852, the law firm of Seevers & Smith, composed of William H. Seevers, and the defendant, W. T. Smith, received for collection two notes held by the defendant, Garber, against Peter Barnett. The latter being unable to pay at once, assigned to Seevers, in trust, and as collateral security on this debt, a bond which Barnett, with one Wright, held against Louis and John Garrett, for the conveyance of certain lands, amounting to one hundred acres, in which bond said Barnett held an interest of one undivided moiety; upon the assignment of which, Seevers gave a receipt, identifying the bond, and stating that he was "to hold the same in trust, until said Barnett secured by mortgage, or otherwise, two notes given by him, dated this day, to G. C. Garber, for three hundred and fifty-five dollars and sixty-one cents each, payable in four and in six months," which is dated January 2, 1852. Afterwards, the said Seevers & Smith received from the complainants for collection, certain demands which they held against the said Barnett, which were settled by the latter giving two notes for four hundred and twelve dollars and seventy-three cents each, and to secure them he made another assignment of his interest in the same bond, causing the assignment to cover the demands of both Garber and Cox & Shelley. Upon this arrangement, Seevers & Smith gave Barnett a new receipt, on the 24th of January, 1852, re-

Cox & Shelley v. Garber et al.

citing the assignment of the bond to Seevers, and the demands held by them, in favor of both the above creditors; namely, two notes in favor of Garber, and two in favor of Cox & Shelley; and stipulating that the condition of the assignment of the bond by Barnett to Seevers, was " for the purpose of securing the payment of said notes, and no other ; and if Barnett should, at any time, be able to get the title to said property," the bond was to be delivered up to him, he securing the said notes by mortgage on the property. On the 20th of May, 1852, Seevers assigned his right and title in the bond to the said W. T. Smith.

Cox & Shelley originally brought their bill against Smith alone, praying that he might be decreed to sell the land and pay their debt. Smith, in his answer, disclosed the circumstances, showing the existence of Garber's claim, and setting forth that these creditors conflicted in their claims; each claiming a priority of right in the proceeds of the land. Garber was then made a party defendant. The petitioners claim that if they are not entitled to a priority, they have a right, at least, to come in equally with Garber, and have a *pro rata* distribution of the proceeds. Garber, on the other hand, claims that he is first entitled to the proceeds to the extent of his debt, alleging that it was through him that complainants obtained their information ; and after his claim had been secured as above, on the second of January, he informed them of what he had done—upon which they sent their claim to the same attorneys, who arranged it as above mentioned. Smith's answer states, that he understood, throughout the transaction, that Garber was to retain the priority which he originally possessed. A general replication to the answers of Garber and Smith, was filed.

Seevers was called to testify as a witness, and in his deposition says : "I always supposed, until the copy, (exhibit C.), was shown me, (which is the receipt given by Seevers & Smith to Barnett, and the gist of which, regarding the object for which the assignment was made, is given in the statement of the case), that said Garber's claim had

a preferred lien, on the property described in the bond; and if the said copy is correct, the same is not as I intended it should be. Garber's claim having been first in the hands of Seevers & Smith, and said bond having been assigned to secure the same, I considered it my duty to retain the security I had for its payment, in the same position it was when the claim of Cox & Shelley came into my hands, and so intended it should be, and if it does not bear that relation, then I made a mistake in drawing said exhibit C., and did what I did not intend to do." He states further, that after the demand of Garber had been arranged, as before mentioned, they received those of Cox & Shelley; and, as the best he could do to secure them, made a similar arrangement, taking new notes—retaining the bond as assigned—and giving the receipt heretofore mentioned as given by Seevers & Smith to Garber, called exhibit C. The court rendered a decree, that the trustee sell the land, and, after paying the expenses, that he apply the proceeds to the payment of the two creditors, in proportion to their amounts, and without preference. The complainants appeal.

*S. A. Rice* and *Wm. Loughridge*, for the appellants.

*W. H. & J. A. Seevers*, for the appellees.

WOODWARD, J.—The plaintiffs object to so much of Seevers' testimony as speaks of what he intended to put into exhibit C., (the receipt), when it was written. It may well be doubted whether the testimony goes to contradict the receipt. This does not specify the relative rights of the creditors, nor determine whether they were to receive equal benefit. It only says that the assignment is for the purpose of securing the payment of the notes—meaning those of both parties; and it is not clear that an explanation may not be made, as to their position and rights, or that an agreement or understanding upon that point may

not be shown. There is no controversy, or question, be-tween Barnett and Seevers & Smith, or either of them.

But the second and principal thought is, that this paper now in question, is only the receipt of Seevers & Smith to Barnett, on obtaining the possession and assignment of the bond, signifying, so far as its own purpose required, and in general terms, the object for which it was given and held. There is no question between them and Barnett. The question is between the two creditors, and this paper was not designed to, nor does it profess to, determine their rights, as between themselves. They are entitled to show their relative positions and rights ; and doing this, is not a contradiction of the paper, in this instance—both be-cause that defines nothing of these, and because the instru-ment is not between them and Barnett. The duty and obligation of Seevers & Smith, under that paper, will be as fully discharged under one mode of distribution as un-der another, since the whole object of it is, to show that they held the bond as assigned for the payment of the notes, whilst the manner of application—or the proposi-tion of distribution—may consistently exist outside of, and independent of, this receipt between Seevers & Smith and Barnett, it being a matter between the debtor and credit-or, and not between the attorneys and the creditor.

We do not intend to say, that these attorneys might not take such a course as to bind their clients ; nor that Seevers, upon taking the assignment, might not execute such a declaration of trust as to have this effect. But we do not regard the paper given by Seevers & Smith to Barnett, in this light. It is only in the nature of an attorney's receipt. It is true that all such receipts, specifying to what end the collected funds are to be appropriated, contain a trust, but yet there is a difference between a trust deed, or a declaration of trust, and a mere receipt, and this is of the latter character. It is also to be observed, that the assignment is to Seevers alone, (and from him to Smith), whilst the receipt is by the firm of Seevers & Smith, which latter circumstance is con-

clusive of its character.   For these reasons, it was proper, in our view, that Seevers should testify to the circumstances in which the respective claims were received, and tending to show the rights of the two creditors.

The question remaining to be disposed of is, what are the rights of the two creditors in the funds to arise from the sale of the land.   It appears in the case, that Smith had obtained the legal title thereto, and at the September term, 1857, the court decreed that he sell the land; and after paying the expenses, that he apply the proceeds to the payment of the demands of the two creditors, in proportion to their amounts, and without preference.

In this decree, we think, the court erred.   It is true that courts will favor an equal, or a *pro rata*, distribution of funds among creditors, but yet they cannot do this at the expense of the parties' agreements, nor of the rights which the law gives to any one of them.   It does permit one to secure himself, without reference to others, and in priority to them.   And Garber had placed himself in this position.   His demand had been first sent to Seevers & Smith, and Seevers had obtained the security of the assignment of the bond.   If Cox & Shelly had not actual personal knowledge of Garber's position, they at least had through the attorneys, who were the same that secured Garber's claim ; and they have no ground upon which they can drive the latter from his position.   His is a prior right, and they have neither right nor equity to oust him from it; nor to come in and stand equal with him.   Their claim must be postponed to Garber's, and they must be content to take the residue, after the payment of his debt.

Judgment reversed.